**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

CAUSE OF ACTION INSTITUTE                  )
1875 Eye Street, N.W., Suite 800           )
Washington, D.C. 20006,                    )
                                           )
      Plaintiff,                       )
                                           )
      v.                               )     Civil Action No. 16-1783
                                           )
INTERNAL REVENUE SERVICE                   )
1111 Constitution Avenue, N.W.             )
Washington, D.C. 20224,                    )
                                           )
      Defendant.                       )
_____   )

## COMPLAINT

This is an action under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"),

seeking access to records requested by Plaintiff Cause of Action Institute ("CoA Institute"). The

requested records, maintained by Defendant, the Internal Revenue Service ("IRS"), may

illuminate how the IRS and the White House communicated on matters pertaining to the

targeting of applications for 501(c)(4) tax-exempt status and the handling of confidential

taxpayer information.

## NATURE OF THE ACTION

1.      This case concerns two FOIA requests. Despite acknowledging receipt of the first

CoA Institute request and processing it for over a year, Defendant ultimately closed the request,

asserting its invalidity. That closure was improper and not in accordance with the FOIA, IRS

FOIA regulations, or the Internal Revenue Manual. Defendant also refused to accept as valid a

second CoA Institute FOIA request that seeks a similar, though narrower, collection of records.

In both cases, Defendant has unlawfully withheld records to which CoA Institute has a right and

the disclosure of which will serve the public interest in ensuring a transparent and accountable government.

2.    The two FOIA requests concern records of communications between high-level political appointees at the IRS and the White House. Specifically, the requests at issue seek access to records of correspondence between IRS leadership and three persons who worked at the White House: Andrew C. Strekla, Danielle C. Gray, and Boris Bershteyn.

3.    Andrew Strelka is an attorney who formerly worked in the Exempt Organizations Section of the IRS and then became a trial attorney in the Department of Justice ("DOJ") Tax Division from 2010 – 2014. From December 2013 to June 2014, Mr. Strelka was detailed from the DOJ to work as "clearance counsel" in the Office of the White House Counsel in the Executive Office of the President. Mr. Strelka now works in private practice.

4.    As part of its investigation into the targeting of politically-disfavored groups in the review and determination of applications for 501(c)(4) tax-exempt status, the U.S. House of Representatives Committee on Oversight and Government Reform discovered that Mr. Strelka, while serving as a trial attorney at the DOJ, represented the IRS in litigation brought by Z Street, Inc., a group which had applied for tax exempt status during Mr. Strelka's tenure at the IRS Exempt Organizations Section and which alleged that it had been unlawfully targeted by the IRS. Congressman Darrel Issa, former Chairman of the House Oversight Committee, called this representation a "conflict of interest." Letter from Rep. Darrell Issa & Rep. Jim Jordan, U.S. H.R. Comm. on Oversight & Gov't Reform, to Eric H. Holder, U.S. Att'y Gen., Dep't of Justice, at 3–4 (Aug. 25, 2014), *available at* http://bit.ly/29ykqMf.

5.    While Mr. Strelka was detailed from the DOJ to work as clearance counsel in the Office of the White House Counsel, he vetted potential candidates for appointment by President

Obama to high-ranking government posts by, among other means, examining confidential

taxpayer information.  Through its own independent investigation, CoA Institute has sought to

identify existing policies, procedures, rules, or guidelines, if any, that were in place to ensure that

detailees, such as Mr. Strelka, were appropriately screened to prevent confidential taxpayer

returns or return information from being unlawfully accessed or disclosed.  To date, it appears

that no such safeguards were in place to prevent private and confidential taxpayer information

from being inappropriately disclosed to the White House.  In addition, there appear to have been

no safeguards in place to prevent the continued involvement—even informal—of Mr. Strelka in

IRS matters while he was detailed to the White House.  This is especially concerning considering

his ongoing communication with the IRS while employed at the DOJ.  *See* U.S. H. Comm. on

Oversight & Gov't Reform, Staff Report: The Internal Revenue Service's Targeting of

Conservative Tax-Exempt Applicants: Report of Findings for the 113th Congress at 167 (Dec.

23, 2014 ), *available at* http://bit.ly/29nHE9s ("Even after he left the IRS, Strelka maintained a

close relationship with [Lois] Lerner . . . .  Strelka's connection with the IRS is so strong that he

was made aware of Lerner's hard drive crash in June 2011 almost immediately after it

occurred.") (citations omitted).

     6.     Danielle C. Gray is a former Special Assistant to the President and Associate

Counsel in the Office of the White House Counsel.  Ms. Gray began her employment at the

White House in 2009 and left approximately two years later to work for the DOJ.  Ms. Gray

returned to the White House in 2011 to become Deputy Assistant to the President for Economic

Policy and, eventually, Deputy Director of the National Economic Council.  In 2013, Ms. Gray

was appointed Assistant to the President and Cabinet Secretary.  Ms. Gray currently works in

private practice.

7.     Boris Bershteyn is a former Special Assistant to the President and Associate Counsel in the Office of the White House Counsel.  Mr. Bershteyn later became General Counsel for the White House Office of Management and Budget ("OMB").  From 2012 – 2013, Mr. Bershteyn served as Acting Administrator of the White House OMB Office of Information and Regulatory Affairs.  Mr. Bershteyn currently works in private practice.

8.     The two CoA Institute FOIA requests seek the release of records that may reveal the extent to which confidential taxpayer information was the subject of improper communications between the IRS and the White House, and, in turn, between attorneys detailed to the White House and employees of the IRS.  The requested records may also reveal the extent to which top-level White House employees knew of or coordinated with the IRS in the targeting of conservative and free-market groups that had applied for tax-exempt status.

9.     The improper closure of the CoA Institute FOIA requests illustrates an endemic problem among agency FOIA offices.  The administrative closure of requests for unjustifiable reasons frustrates public access to government information and evidences the breach of agency obligations under the FOIA.  *See, e.g.*, Letter from Cause of Action Inst., *et al.*, to Miriam Nisbet, Dir., Office of Gov't Info. Servs., Nat'l Archives & Records Admin. (Oct. 30, 2014), *available at* http://bit.ly/29wzZ9P (requesting that "OGIS investigate [improper administrative closure] and its impact on FOIA requesters as a barrier to pursuing government records").  The DOJ Office of Information Policy has addressed some of those concerns with respect to the use of "still-interested" letters, *see* Dep't of Justice, Office of Info. Pol'y, *Limitations on Use of "Still-Interested" Inquiries*, http://bit.ly/29iX6QT (last accessed July 6, 2016), but agencies such as the IRS continue to abuse the practice.

10.     FOIA requires that requesters "reasonably describe" records and otherwise comply with published FOIA regulations. 5 U.S.C. § 552(a)(3)(A)(i)–(ii).  The IRS FOIA regulations construe this provision to require that a requester describe requested records "in reasonably sufficient detail to enable the IRS employees who are familiar with the subject matter of the request to locate the records without placing an unreasonable burden upon the IRS."  26 C.F.R. § 601.702(c)(5)(i).  When a requester is deficient in his description of such records, he "shall be afforded an opportunity to refine the request," which "may involve a conference with knowledgeable IRS personnel[.]"  *Id.*  The IRS prohibits this "reasonable description requirement" from being "used . . . as a device for improperly withholding records[.]"  *Id.*

11.     The Internal Revenue Manual reiterates these requirements and instructs disclosure officials "not to read a request so strictly that the requester is denied information the agency knows exists."   Internal Revenue Serv., Internal Revenue Manual 11.3.13.5.5(1) (revised Aug. 14, 2013) [hereinafter "IRM"], *available at* http://bit.ly/29yhhvR.  When a request is in some manner defective, IRS regulations and the IRM require that "[c]ase workers . . . notify the requester that the [imperfect] request does not meet certain requirements of the FOIA[,] that more information is needed," and that the requester has "35 calendar days to perfect the request." IRM 11.3.13.5.5(2); *see* 26 C.F.R. § 601.702(c)(1)(i).

12.     The CoA Institute FOIA requests at issue in this case met the "reasonable description" requirement set forth under FOIA, the IRS FOIA regulations, and the IRM.

## JURISDICTION AND VENUE

13.     Jurisdiction is asserted pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 552(a)(4)(B), (a)(6)(E)(iii).

14.     Venue is proper pursuant to 28 U.S.C. § 1391(e) and 5 U.S.C. § 552(a)(4)(B).

## PARTIES

15.     CoA Institute is a non-profit strategic oversight group committed to ensuring that government decision-making is open, honest, and fair.  In carrying out its mission, CoA Institute uses various investigative and legal tools to educate the public about the importance of government transparency and accountability.  It regularly requests access under the FOIA to the public records of federal agencies, entities, and offices, including the IRS, and disseminates its findings, analysis, and commentary to the general public.

16.     The IRS is an agency within the meaning of 5 U.S.C. § 552(f)(1) and has possession, custody, and control of records to which CoA Institute seeks access and which are the subject of this Complaint.

## FACTS

### A.     The January 2014 FOIA Request

17.     By letter, dated January 23, 2014, CoA Institute submitted a FOIA request to the IRS seeking "all communications between Douglas Shulman, Steven Miller, Daniel Werfel, or any Internal Revenue Service (IRS) employee within the Tax Exempt & Government Entities Division, and Andrew C. Strelka, Danielle C. Gray, or Boris Bershteyn."  Ex. 1 ("January 2014 FOIA Request").

18.     The time period of this first request was January 2010 to the present.  *Id*.

19.     CoA Institute also requested a public interest fee waiver and classification as a representative of the news media for fee purposes.  *Id.*

20.     The IRS received the January 2014 FOIA Request on January 28, 2014 and assigned it tracking number F14034-0011.  *See* Ex. 2.

21.     On several occasions throughout the remainder of 2014, the IRS unilaterally extended its response time for the January 2014 FOIA Request.

22.     On February 25, 2014, the agency asked for more time to complete the CoA Institute request, stating that it needed "additional time to search for, collect, and review responsive records from other locations" and thereby implicitly acknowledging that it was processing the CoA request.  *Id.*  The IRS also stated that there was no "need to reply to this letter if you agree to [an] extension" to May 30, 2014 for the IRS to "provide a final response." *Id.*  CoA Institute did not reply to that letter.

23.     On May 21, 2014, the IRS wrote again, stating that it was "still working on your request" and that it "need[ed] additional time to obtain documents responsive to your request." Ex. 3.   The IRS said it would contact CoA Institute by August 29, 2014 if it was "still unable to complete your request."  *Id.*

24.     On August 19, 2014, the IRS again wrote to CoA Institute to extend its expected response date, this time to December 2, 2014.  *See* Ex. 4.  The IRS letter stated that the agency was "still working on your request and need[ed] additional time to collect, process [sic] review any documents responsive to your request."  *Id.*

25.     On December 1, 2014, the IRS wrote yet another letter, this time extending its response date to March 23, 2015.  *See* Ex. 5.  The agency repeated its earlier statements that it was "still working on" the January 2014 FOIA Request and that it "need[ed] additional time to collect, process [sic] review any documents responsive" to it.  *Id.*  The IRS stated it would contact CoA Institute by March 23, 2015 "if [it was] still unable to complete [the] request."  *Id.*

26.     On April 9, 2015, the IRS wrote to CoA Institute providing what the IRS called its "final response" to the January 2014 FOIA Request.  Ex. 6.  In that letter, the IRS asserted for

the first time that the January 2014 FOIA Request was "not valid," because it did not

"'reasonably describe' the records sought" and did not "describe the documents in sufficient

detail to enable [the IRS] to locate the records 'without placing an unreasonable burden upon the

IRS.'"  *Id.* at 1.  The IRS suggested that CoA Institute "consider revising [its] request making it

more specific as to subject matter, time period and/or limiting the request only to specific

employees within the Tax Exempt & Government Entities Division."  *Id.* at 2.

27.     By letter, dated July 22, 2015, CoA Institute wrote to the IRS objecting to the

agency's administrative closure of the January 2014 FOIA Request and asking the IRS to re-

open it on the grounds that it met all the FOIA's requirements for a proper request.  *See* Ex. 7.

28.     In its letter, CoA Institute explained that the January 2014 FOIA Request was

proper because it identified likely record custodians, stated the subject matter of the request, and

otherwise conformed to all applicable FOIA regulations.  *Id*. at 2.  CoA Institute also explained

that, while the January 2014 FOIA Request was pending for more than a year during which time

the IRS had written multiple times to CoA Institute about it, the IRS had never once sought to

clarify or narrow the scope of the request, never once suggested that more information was

needed or would help to process the request, and never once indicated that the request was in any

way imperfect or defective prior to issuing its "final response."  *Id.*

29.     CoA Institute also outlined how the administrative closure of the January 2014

FOIA request was contrary to IRS FOIA regulations and procedure.  *Id.* at 2–3.  CoA Institute

cited Section 11.3.13.5.5(2) of the Internal Revenue Manual, which states that IRS caseworkers

must "notify the requester that the request does not meet certain requirements of the FOIA and

that more information is needed before the request can be processed.  The letter must point out

the specific deficient item(s) to the requester and must advise that he/she has 35

calendar days to perfect the request." IRM 11.3.13.5.5(2) (revised Aug. 14, 2013). Before its

"final response," the IRS never notified CoA Institute that the January 2014 FOIA Request did

not meet any particular requirement of the FOIA or that more information was needed to process

it, nor did it point out any specifically deficient item or other defect. *See* Exs. 2-6. In addition,

the IRS never informed CoA Institute that it had 35 calendar days to perfect its request.

30.     By letter, dated July 31, 2015, the IRS responded with another purported "final

response," again stating that the January 2014 FOIA Request was invalid and could not be

processed. *See* Ex. 8. The IRS maintained that the January 2014 FOIA Request, which it had

assigned a new tracking number, F15209-0097, needed to be revised, but the agency did not

address any of the arguments CoA Institute made in its July 22, 2015 letter. *See id.*

###     B.     **The May 2016 FOIA Request**

31.     On May 20, 2016, CoA Institute submitted a second FOIA request to the IRS

seeking "all communications between Douglas Shulman, Steven Miller, Daniel Werfel, or John

Koskinen, and Andrew C. Strelka, Danielle C. Gray, or Boris Bershteyn." Ex. 9 ("May 2016

FOIA Request").

32.     The time period of this second FOIA request was January 2010 to June 2014. *Id.*

33.     CoA Institute also requested a public interest fee waiver and classification as a

representative of the news media for fee purposes. *Id.* at 1–3.

34.     By letter, dated June 14, 2016, the IRS issued a "final response" to the May 2016

FOIA Request. *See* Ex. 10. The agency stated that it was "unable to process" the May 2016

FOIA Request "as it does not meet the requirements of the FOIA or the applicable agency

regulations" because it did not "'reasonably describe' the records sought" and did not "describe

the documents in sufficient detail to enable [the IRS] to locate the records 'without placing an

unreasonable burden upon the IRS.'" *Id.* at 1.

35.     By letter, dated July 7, 2016, CoA Institute wrote the IRS requesting that the agency re-open the May 2016 FOIA Request and asserting that the IRS had inappropriately refused to process the request in violation of FOIA and IRS rules.  *See* Ex. 11.  CoA Institute explained that the May 2016 FOIA Request met FOIA's requirement to "reasonably describe" the requested records because it "provided the IRS with a discrete and manageable list of likely records custodians" and "identified by name four IRS employees who may have communicated with three named White House employees."  *Id.* at 2.  CoA Institute also provided the discrete time period for which it was seeking records, stated the subject matter as "correspondence between the named IRS and White House officials," and otherwise conformed to all applicable FOIA regulations.  *Id.*

36.     By letter, dated August 9, 2016, the IRS appeared to respond to the July 6, 2016 CoA Institute correspondence by re-opening the May 2016 FOIA Request.  *See* Ex. 12.[1]  The agency assigned the request a new tracking number, F16194-0089, and indicated it would be unable to issue a final determination within the statutory response period.  *Id.*  CoA Institute has been unable to confirm that the IRS continues to process the May 2016 FOIA Request under this new tracking number.

## COUNT I
### (Violation of FOIA: Failure to Comply with Statutory Requirements)

37.     CoA Institute repeats paragraphs 1 through 36.

38.     The January 2014 and May 2016 FOIA Requests both reasonably describe the requested records and otherwise comply with the FOIA and applicable FOIA regulations.

---

[1] In its August 9, 2016 letter, the IRS did not specifically indicate that it was re-opening the May 2016 FOIA Request.  However, based on the date of the "FOIA request" referenced in the letter, CoA Institute believes the letter refers to the May 2016 FOIA Request.

39.     The FOIA requires agencies to respond to requests within twenty (20) business days or, in "unusual circumstances," within thirty (30) business days.  5 U.S.C. §§ 552(a)(6)(A)–(B).  If an agency requires additional time, the FOIA mandates that the agency provide requesters "an opportunity to arrange with the agency an alternative time frame for processing the request[.]"  *Id.* § 552(a)(6)(B)(ii).

40.     The statutory time limit for the processing of the January 2014 FOIA Request has expired.  Although the IRS implicitly acknowledged that the January 2014 FOIA Request was valid by processing it for more than a year, it thereafter closed the request in violation of the FOIA, IRS FOIA regulations, and the Internal Revenue Manual.

41.     The statutory time limit also has expired for the May 2016 FOIA Request without any effort by the IRS to process the request.

42.     By refusing to make any search so as to locate records responsive to the January 2014 and May 2016 FOIA Requests within the relevant statutory timeframes and by improperly closing the requests as invalid, the IRS has denied CoA Institute access to agency records to which it has a right under the FOIA.

43.     CoA Institute has fully exhausted its administrative remedies under 5 U.S.C. § 552(a)(6)(C).

## **RELIEF REQUESTED**

WHEREFORE, CoA Institute respectfully requests and prays that this Court:

a.      Order the IRS to process the January 2014 and May 2016 FOIA Requests and to make a final determination on each within twenty (20) business days of the date of the Order;

b.      Order the IRS to produce all responsive records promptly after issuing its final

determinations on the January 2014 and May 2016 FOIA Requests;

c.      Order the IRS to issue a *Vaughn* index accompanying the records produced

explaining each redaction or withholding;[2]

d.      Award CoA Institute its costs and reasonable attorney fees incurred in this action

pursuant to 5 U.S.C. § 552(a)(4)(E); and

e.      Grant such other relief as the Court may deem just and proper.


Dated:  September 6, 2016                  Respectfully submitted,

*/s/ Julie Smith*
Julie Smith
D.C. Bar No. 435292
Lee A. Steven
D.C. Bar No. 468543
Ryan P. Mulvey
D.C. Bar No. 1024362

CAUSE OF ACTION INSTITUTE
1875 Eye Street, N.W., Suite 800
Washington, D.C. 20006
Telephone: (202) 499-4232
Facsimile: (202) 330-5842
julie.smith@causeofaction.org
lee.steven@causeofaction.org
ryan.mulvey@causeofaction.org

*Counsel for CoA Institute*

---

[2] *See generally Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) (requiring an agency to prepare an index correlating each withheld document, or portion thereof, with a specific FOIA exemption and nondisclosure justification).